**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SEAN MICHAEL SPICER,<br><br>*Plaintiff*,<br><br>v.<br><br>RENEA SUTTON, individually<br><br>*Defendant*. | Civil Case No. 1:26-cv-08902<br><br>Related Case:<br>Sutton v. Lightning Shared Scooter Company, LLC, et al.,<br>No. 1:25-cv-07797 (LJL)<br><br>**COMPLAINT**<br>**WAIVER OF JURY TRIAL** |

Plaintiff Sean Michael Spicer ("Mr. Spicer" or "Plaintiff"), by and through his undersigned counsel, for his Complaint against Defendant Renea Sutton ("Sutton" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action under New York's anti-SLAPP law arising from seven state-law claims that Sutton brought against Mr. Spicer in Sutton v. Lightning Shared Scooter Company, LLC, et al., No. 1:25-cv-07797 (LJL) (S.D.N.Y.) (the "Underlying Action"), based on Mr. Spicer's speech in a single Cameo video. To be clear, Sutton did not sue Mr. Spicer because he took her money, contracted with her, communicated with her, or participated in the business of Lightning Shared Scooter Company, LLC ("LSSC"). She sued him because she, without a substantial basis in fact and law, treated his Cameo activity, and the public promotional role she attributed to that speech, as evidence that he was LSSC's "public spokesperson," "operator," and a participant in its alleged fraud. Moreover, she continued those claims after the record showed beyond any reasonable doubt that the speech on which she relied provided no factual or legal basis to treat Mr. Spicer as a participant in LSSC's alleged fraud.

2. Sutton's original complaint did not name Mr. Spicer. Six days later, however, she amended the pleading to add him, together with former NBA players Stephon Xavier Marbury and Nicholas Aaron Young, each of whom she identified as a recognizable public figure whose appearance allegedly lent "legitimacy" to LSSC and helped "induce investors" to invest. Of those three public figures, Mr. Spicer was the only one Sutton served and required to defend the action. On that basis, Sutton sought to hold Mr. Spicer personally liable for LSSC's alleged fraud, seeking $45 million in compensatory damages, plus punitive and treble damages under civil RICO and seven New York-law claims. Although both LSSC entities had been served, neither appeared nor responded, and Sutton did not pursue default procedures against them.[1] As a practical matter, Mr. Spicer became the only defendant against whom Sutton actively litigated the case.

3. But Mr. Spicer's actual participation in Cameo and his alleged participation in LSSC were two very different things. He recorded one short Cameo video, which was created through a platform whose governing terms permitted purchasers to reproduce, distribute, and publicly display that video. The undisputed record clearly shows that Mr. Spicer did not agree to or in fact solicit investors, join LSSC's business, receive Sutton's money, or participate in any fraud. Sutton's theory against him thus rested on his speech and the public role she attributed to it, not on any actual participation by Mr. Spicer in LSSC's business or alleged fraud.

4. The difference between Mr. Spicer's speech and participation in LSSC became clear early in the Underlying Action. After Sutton opposed Mr. Spicer's motion to dismiss and expanded her allegations beyond the First Amended Complaint (the "FAC", included as Exhibit F (Sutton FAC)), Mr. Spicer served Sutton with his sworn declaration, the Cameo booking materials,

---

[1] As of October 2, 2026, the Court directed Sutton to show cause why her claims against the LSSC entities should not be dismissed for failure to prosecute unless she requested certificates of default by October 23, 2026.

the video transcript, and Cameo's written communication concerning its investigation into LSSC's misuse of Mr. Spicer's speech. Those materials showed one Cameo video, no request that Mr. Spicer solicit investors or promote an investment, and no factual basis to treat his Cameo activity as participation in LSSC's alleged fraud.

5. The video itself underscored the same point. In referring to the "growth of LSSC," Mr. Spicer immediately added, "apparently that's a he," reflecting that he did not even know who or what LSSC was. Nothing in the video suggested familiarity with LSSC's business, much less participation in it.

6. Discovery confirmed that Sutton had no additional factual basis tying Mr. Spicer to the alleged scheme. She stated that she had never communicated with him. She could not produce the alleged Spicer "video promotions." She could not produce documents or other evidence showing when or where she had viewed them. And the only video she later identified as potentially related portrayed Mr. Spicer as having no role in LSSC and as having himself been misled by the enterprise. Even so, she continued to maintain the Underlying Action against him.

7. On July 10, 2026, this Court dismissed every claim Sutton asserted against Mr. Spicer, finding no actionable fraudulent statement by him, no plausible allegation that he knowingly agreed to participate in LSSC's fraud, and none of the relationships or conduct necessary to support Sutton's remaining state-law claims. The Court gave Sutton sixty days to amend. She did not do so.

8. Mr. Spicer does not minimize the losses Sutton alleges she suffered. But those losses did not make Mr. Spicer responsible for LSSC's alleged fraud. After the January 2026 submissions and subsequent discovery eliminated any remaining factual basis for her theory, Sutton either had viewed Mr. Spicer's actual video and disregarded what it showed or had never

viewed the speech on which she purported to base her claims against him. Either way, there was no factual basis to continue treating Mr. Spicer as an LSSC spokesperson, operator, or participant in its alleged fraud.

9. Those facts state a claim under New York Civil Rights Law § 70-a, which provides a remedy when claims arising from public participation are commenced or continued without a substantial basis in fact and law. Sutton commenced the seven New York-law claims by treating Mr. Spicer's speech as evidence of participation in LSSC's business and alleged fraud without a substantial factual basis for doing so. She then continued those claims after the record eliminated any reasonable basis for that theory. This action seeks the relief § 70-a provides.

## THE PARTIES

10. Plaintiff Sean Michael Spicer is a citizen of the State of Virginia. He is a former White House Press Secretary and White House Communications Director who served in the administration of President Donald J. Trump and has a long professional history of public-facing communications, political speech, and media activity.

11. Upon information and belief, Defendant Renea Sutton is domiciled in and a citizen of the State of New York. Sutton is also the founding Treasurer of Black Lives Matter Foundation, Inc., a New York nonprofit organization recognized as tax-exempt under Section 501(c)(3) of the Internal Revenue Code.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Mr. Spicer and Sutton are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Mr. Spicer seeks damages recoverable under N.Y. Civil Rights Law § 70-a, including the reasonable attorneys' fees incurred defending Sutton's seven New York-

law claims in the Underlying Action and prosecuting this action, additional compensatory damages under § 70-a(1)(b), and punitive damages under § 70-a(1)(c).

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred here, including Sutton's filing and prosecution of the Underlying Action.

14. This action is related to the Underlying Action, which remains pending before the Honorable Lewis J. Liman. Mr. Spicer is filing a Statement of Relatedness concurrently with this Complaint pursuant to Rule 13 of the Rules for the Division of Business Among District Judges.

## PROCEDURAL BASIS

15. Section 70-a expressly authorizes an "action, claim, cross claim or counterclaim" for the relief it provides. Judge Liman has held that § 70-a creates a substantive right enforceable in federal court and that the right must be pursued through a formal claim rather than New York's state-law motion procedure. *See Grifols, S.A. v. Yu*, 2026 U.S. Dist. LEXIS 64961, at *16–17 (S.D.N.Y. Mar. 26, 2026); *Lively v. Wayfarer Studios LLC*, 2026 U.S. Dist. LEXIS 65917, at *22–24 (S.D.N.Y. Mar. 27, 2026).

## FACTUAL ALLEGATIONS

### A. Mr. Spicer's Cameo Activity

16. Cameo is an online platform where users can request personalized video communications from public figures. Under the Terms of Service governing Mr. Spicer's relevant Cameo activity, purchasers of ordinary Cameo videos were expressly permitted to reproduce, distribute, and publicly display those videos, including on social media, subject to restrictions on commercial and promotional use. Cameo separately offered "Business Cameo Videos" for the

"promotion and/or endorsement of a product, service, brand, or business." *See* Exhibit A (Cameo Terms of Service (effective Nov. 30, 2024, as captured April 2025)).

17. Mr. Spicer provided video messages through Cameo. On April 24, 2025, a Cameo user submitted a request for Mr. Spicer to record an ordinary Cameo video. The request did not ask Mr. Spicer to solicit investors, promote an investment, or make representations concerning the safety, profitability, legitimacy, or expected returns of an LSSC investment. Rather, the request was categorized as a "Pep Talk" and identified as being "For friend." *See* Exhibit B (Cameo Booking and Order Confirmation).

18. Mr. Spicer completed the request on April 28, 2025. In one short video, he offered general encouragement about the "growth of LSSC . . . apparently that's a he," urged the recipient to "keep working hard," and wished the recipient well. He did not recommend that anyone invest in LSSC, describe an LSSC investment as safe or profitable, promise returns, or represent that he had investigated LSSC or its business. The video also explained that Mr. Spicer's Cameo activity supported charitable causes. *See* Exhibit C (Cameo Video Transcript).

**B. Sutton Places the Cameo in LSSC's Public Investment Campaign**

19. On or about May 2025, that Cameo video appeared in LSSC's public investment campaign. The public Instagram account "LSSCconnect" announced a "HUGE shoutout" from Mr. Spicer, stated that he was "officially giving high praise to LSSC and our mission," told viewers that his message showed why they "should be a part" of LSSC, and urged them to "SIGN UP NOW."

20. Sutton alleged that Spicer-related video content also appeared through WhatsApp, "YouTube-like reels," and other channels used to communicate with and recruit investors. *See* Exhibit H (Sutton Opposition to Spicer Motion to Dismiss).

21. Sutton further alleged that the video activity formed part of LSSC's broader public campaign, which she described as a "robust marketing campaign throughout the United States" using an investor website, YouTube videos, public figures, and other public channels to attract more than three million investors. FAC ¶¶ 46–57 (Exhibit F (Sutton FAC)).

### C. Sutton Treats Mr. Spicer's Cameo Activity as Participation in LSSC

22. Sutton commenced the Underlying Action pro se on September 19, 2025. Her original complaint did not name Mr. Spicer. Six days later, however, she amended the complaint to add Mr. Spicer, Stephon Xavier Marbury, and Nicholas Aaron Young. She also named unidentified John and Jane Does as the "facilitators, managers, owners and operators" of the LSSC enterprise. *Compare* FAC ¶¶ 34, 50 (Exhibit F (Sutton FAC)) *with* Exhibit E (Sutton Original Complaint).

23. In her FAC, Sutton alleged that LSSC used Mr. Spicer and other public figures to "endorse, promote and induce investors" to invest, and that she relied on those endorsements and promotions in deciding to invest. FAC ¶¶ 48–49 (Exhibit F (Sutton FAC)). As to Mr. Spicer, Sutton alleged that he was a "widely known public figure," a "public spokesperson for the LSSC Enterprise," and an "operator" whose role was to provide "legitimacy, video promotions and other inducements" to investors. FAC ¶¶ 11–14 (Exhibit F (Sutton FAC)).

24. Sutton thus sought to impose liability on Mr. Spicer because she treated his Cameo activity, and the public promotional role she unreasonably attributed to it, as evidence that he was part of LSSC's enterprise. She also carried forward verbatim from her original complaint, filed before Mr. Spicer was a defendant, the allegation that she had contracted with "defendants." On that theory, she asserted against Mr. Spicer: (a) seven New York-law claims—fraud, conspiracy to commit fraud, breach of contract, conversion, unjust enrichment, breach of fiduciary duty, and

negligent infliction of emotional distress (collectively, the "Covered Claims"); and (b) civil RICO. *See* Exhibit F (Sutton FAC).

**D. Sutton Makes Mr. Spicer the Only Individual Defendant to Defend the Action**

25. Sutton completed service on Mr. Spicer and both LSSC entities, but the docket reflects no completed service on Marbury, Young, or any Doe defendant. In January 2026, Sutton obtained an extension through February 25, 2026 to serve Marbury and Young. During that extended period, Marbury was a special guest at a January 13, 2026 event at Carnegie Hall in Manhattan. Sutton nevertheless did not complete service on him or Young, and the docket reflects no request for leave to pursue alternative service. On October 2, 2026, the Court ordered Sutton to show cause why the claims against Marbury, Young, and the John and Jane Does should not be dismissed for failure to prosecute.

26. Sutton also had an available path against the defendants she alleged actually operated the fraudulent enterprise. Both LSSC entities had been served and, according to the docket, neither appeared nor responded to the FAC. Sutton could have sought certificates of default against the LSSC entities and pursued the procedures available under Rule 55. She did neither. As a practical matter, Sutton chose instead to litigate the case against Mr. Spicer.

**E. Sutton Continues the Covered Claims After the Factual Basis Falls Away**

27. In response to the FAC, Mr. Spicer moved to dismiss on November 14, 2025. The motion explained that Sutton had swept him into the alleged LSSC fraud based on little more than his status as a public figure and unspecified "video promotions," even though the FAC identified no false statement by him, no facts showing that he knew of or intended to participate in the alleged fraud, and no basis to treat promotional activity as operation or management of the enterprise. It also explained that LSSC had itself wrongfully used Mr. Spicer's name, image, and likeness in

promoting the alleged scheme. *See* Exhibit G (Spicer Motion to Dismiss and Memorandum of Law)

28. On December 17, 2025, Mr. Spicer, through counsel, offered to provide Sutton with a sworn affidavit explaining that he too had been harmed by LSSC's unauthorized use of his name, image, likeness, and speech, and offered to join her as a plaintiff in pursuing LSSC if she dismissed her claims against him. On December 18, Sutton responded that she had "considered [Mr. Spicer's] proposal and have decided that it will not work for [her]." She instead continued to pursue her claims against Mr. Spicer.

29. In her December 29, 2025 opposition, Sutton doubled down. Rather than identify the factual basis missing from the FAC, she expanded her allegations, asserting that Mr. Spicer had recorded multiple promotional "videos," had presented the investment as "stable, safe, and profitable," and that the supposed videos had been distributed through WhatsApp, "YouTube-like reels," and internal recruitment platforms. She also argued that, because Mr. Spicer was a public figure who allegedly promoted an investment opportunity, it was reasonable to infer that he had either conducted due diligence or consciously disregarded the risk that investors would rely on his statements. *See* Exhibit F (Sutton FAC); *See* Exhibit H (Sutton Opposition to Spicer Motion to Dismiss).

30. Mr. Spicer then provided Sutton with the evidence he had offered to supply. With his January 5, 2026 reply, he served a sworn declaration, the Cameo booking materials, the video transcript, and Cameo's written communication concerning its investigation. Those materials showed one ordinary Cameo, not an LSSC promotional campaign, no request that Mr. Spicer solicit investors or promote an investment, and nothing supporting the premise that his Cameo

activity amounted to participation in LSSC's business or alleged fraud. *See* Exhibit C (Cameo Video Transcript); *see* Exhibit D (Cameo Trust and Safety email); *see* Exhibit I (Spicer Reply).

31. Discovery only widened the gap between Sutton's allegations and the facts. Sutton stated that she had "no communications with Defendant Sean Michael Spicer," could not produce the alleged Spicer "video promotions," and could not produce documents showing when or where she had viewed them. The only video she identified as potentially related instead portrayed Mr. Spicer as having no role in LSSC and as having himself been misled. Thus, either Sutton had seen Mr. Spicer's actual video and continued her claims despite what it showed, or she had not seen the video on which her allegations against him purportedly depended.

32. Even then, she continued all seven Covered Claims against Mr. Spicer. By that point, Mr. Spicer was not merely the only individual defendant required to defend the action; he was effectively the only defendant Sutton was actively litigating against.

**F. The Court Dismisses Every Claim Against Mr. Spicer**

33. On July 10, 2026, this Court granted Mr. Spicer's motion and dismissed every claim asserted against him. In retaining supplemental jurisdiction over Sutton's state-law claims, the Court expressly observed that those claims were "meritless." *See* Dkt. No 52 (included here as Exhibit J (Opinion and Order Granting Spicer's Motion to Dismiss)).

34. As to the fraud-based claims, the Court held that neither the FAC nor Sutton's opposition identified a particular fraudulent statement by Mr. Spicer or explained when or where he made one, why it was false, or why any alleged reliance was reasonable. The Court characterized the allegations as "bare-bones" and explained that even the generalized statements Sutton attributed to Mr. Spicer concerning stability, safety, or profitability amounted to non-

actionable puffery. Dkt. No. 52 at 8, 12–16 (Exhibit J (Opinion and Order Granting Spicer's Motion to Dismiss)).

35. The Court also rejected Sutton's effort to treat Mr. Spicer's video activity as participation in LSSC's enterprise. It found that Sutton's allegations that Mr. Spicer was a "public spokesperson" and "operator" were conclusory and that the facts she alleged suggested instead that Mr. Spicer was only "marginally involved in the enterprise." Dkt. No. 52 at 9–10 (Exhibit J (Opinion and Order Granting Spicer's Motion to Dismiss)).

36. The Court likewise held that Sutton had not plausibly alleged that Mr. Spicer knowingly agreed to participate in LSSC's fraud, explaining that "[r]eceiving payment for video promotions alone does not suggest any prior agreement to commit fraud." Dkt. No. 52 at 17 (Exhibit J (Opinion and Order Granting Spicer's Motion to Dismiss)).

37. In dismissing Sutton's unjust-enrichment claim, the Court concluded that, absent plausible allegations of knowledge or participation in the fraud, "the facts as alleged only permit the plausible inference that Spicer was a good-faith service provider" to the alleged scheme. Dkt. No. 52 at 28–29 (Exhibit J (Opinion and Order Granting Spicer's Motion to Dismiss)).

38. The Court dismissed Sutton's remaining New York-law claims as well. It found no contractual or privity-like relationship between Sutton and Mr. Spicer, no allegation that he exercised dominion over Sutton's property, no sufficient connection between Sutton's payments and any compensation he received, no fiduciary relationship, and no plaintiff-specific duty sufficient to support negligent infliction of emotional distress. Dkt. No. 52 at 19–33 (Exhibit J (Opinion and Order Granting Spicer's Motion to Dismiss)).

39. The Court gave Sutton sixty days, until September 8, 2026, to amend. She filed no amended complaint, sought no extension, and alleged no additional facts against Mr. Spicer. No

claim remains pending against him in the Underlying Action. *See* Exhibit J (Opinion and Order Granting Spicer's Motion to Dismiss).

**COUNT I**
**Violation of N.Y. Civil Rights Law § 70-a**

40. Mr. Spicer repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41. New York Civil Rights Law § 70-a permits a defendant in an "action involving public petition and participation," as defined by N.Y. Civil Rights Law § 76-a(1)(a), to recover damages, including costs and attorneys' fees, from a person who commenced or continued such an action. Section 76-a(1)(a) defines an action involving public petition and participation as a "claim based upon" specified communications or conduct involving public petition and participation. Under § 70-a(1)(a), costs and attorneys' fees shall be recovered where the covered action was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification, or reversal of existing law.

42. Mr. Spicer's § 70-a claim is based solely on the Covered Claims. He does not seek relief under § 70-a based on Sutton's federal RICO claim.

**A. The Covered Claims Involved Public Petition and Participation**

43. The Covered Claims were based upon Mr. Spicer's speech and the public promotional role Sutton attributed to it. She alleged that his video activity made him a "public spokesperson" who supplied "legitimacy, video promotions and other inducements" to investors and therefore subjected him to personal liability for LSSC's alleged conduct.

44. As Sutton pleaded them, the Covered Claims were not based merely on the private circumstances in which Mr. Spicer recorded the Cameo. Sutton alleged that his video was publicly disseminated and used by LSSC to promote its business, including as part of a campaign employing public figures, social media, online videos, and other channels to attract investors.

Cameo's governing terms likewise permitted purchasers of ordinary Cameo videos to reproduce, distribute, and publicly display them, including on social media, for authorized personal, non-commercial purposes. *See* Exhibit A (Cameo Terms of Service (effective Nov. 30, 2024, as captured April 2025)).

45. That public-facing use was directly connected to the subject matter Sutton herself alleged. She placed Mr. Spicer's video activity within a nationwide investment campaign conducted through public marketing channels, cryptocurrency transactions, claimed federal and state regulatory status, and an alleged investor base exceeding three million people. That subject matter was not purely private within the meaning of § 76-a(1)(d).

46. Thus, the Covered Claims were based upon expressive activity that Sutton herself alleged was publicly used to promote participation in a nationwide investment campaign involving a matter other than a purely private concern. Whether that public use was attributable to Mr. Spicer, rather than LSSC, does not alter what Sutton alleged as the basis for imposing liability on him. She treated the public use of his speech as evidence that he was LSSC's "public spokesperson," "operator," and a participant in its alleged fraud. The Covered Claims therefore involved "public petition and participation" within the meaning of § 76-a(1)(a).

**B. Claims Lacking Substantial Basis**

47. Having made Mr. Spicer's speech the basis for imposing liability on him, Sutton commenced, and at minimum continued, the Covered Claims without a substantial basis in fact and law. The FAC identified no actionable statement by Mr. Spicer, no direct communication between Sutton and Mr. Spicer, no facts supporting a reasonable inference that he knowingly participated in LSSC's alleged fraud, and no facts establishing the relationships necessary to support the remaining Covered Claims. The only basis the FAC actually identified for tying Mr.

Spicer to LSSC was expressive, his status as a public figure and his alleged role as a "public spokesperson" who provided unspecified "video promotions." Sutton converted that expressive activity into the asserted basis for personal liability for LSSC's alleged fraud. *See* Exhibit F (Sutton FAC).

48. By January 2026, Sutton had been served with Mr. Spicer's sworn declaration, the Cameo booking materials, the video transcript, and Cameo's written communication concerning its investigation. Those materials showed one Cameo video, no request that Mr. Spicer solicit investors or promote an investment, and no factual basis to treat his Cameo activity and related speech as participation in LSSC's enterprise. *See* Exhibit C (Cameo Video Transcript); *see* Exhibit D (Cameo Trust and Safety email).

49. Sutton's own discovery responses supplied no missing factual basis. She admitted that she had never communicated with Mr. Spicer, could not produce the alleged Spicer "video promotions," and could not produce documents showing when or where she had viewed them. The only video she identified as potentially related instead portrayed Mr. Spicer as having no role in LSSC and as having himself been misled. Sutton nevertheless continued all seven Covered Claims.

50. This Court ultimately dismissed each Covered Claim because Sutton had not plausibly alleged an actionable statement, knowing participation in LSSC's fraud, or the relationships and conduct necessary to support the remaining state-law claims. *See* Exhibit J (Opinion and Order Granting Spicer's Motion to Dismiss).

51. The Covered Claims also could not be supported by a substantial argument for the extension, modification, or reversal of existing law, and Sutton advanced no such argument in the Underlying Action.

52. As a result, Mr. Spicer incurred reasonable attorneys' fees and costs defending the Covered Claims and has incurred, and will continue to incur, reasonable attorneys' fees and costs prosecuting this action. Mr. Spicer is therefore entitled to recover those amounts under § 70-a(1)(a).

**C. Additional Compensatory and Punitive Damages**

53. Section 70-a provides additional remedies beyond the attorneys' fees and costs recoverable under § 70-a(1)(a). Under § 70-a(1)(b), Mr. Spicer may recover other compensatory damages upon a showing that Sutton commenced or continued the Covered Claims for the purpose of harassing, intimidating, punishing, or otherwise maliciously inhibiting his free exercise of speech, petition, or association rights. Section 70-a(1)(c) imposes a higher standard for punitive damages, requiring a showing that Sutton commenced or continued the Covered Claims for that sole purpose.

54. The facts support the inference required by § 70-a(1)(b). Sutton repeatedly declined opportunities to end the claims even as their factual basis disappeared. Mr. Spicer first moved to dismiss and explained that LSSC had itself misused his name, image, and likeness. He then offered to provide Sutton with a sworn affidavit explaining that he too had been harmed by LSSC and to join her as a plaintiff in pursuing LSSC. Sutton declined. After she nevertheless opposed dismissal and expanded her allegations, Mr. Spicer supplied the promised evidence showing one ordinary Cameo, no agreement to promote an investment, and no participation in LSSC's business or alleged fraud.

55. Discovery made the lack of any reasonable factual basis for continuing against Mr. Spicer even clearer. Sutton admitted that she had never communicated with him, could not produce the supposed promotional videos, and could not identify when or where she had viewed them. The

only video she identified as potentially related portrayed Mr. Spicer as uninvolved in LSSC and himself misled. Thus, whether Sutton had viewed Mr. Spicer's actual video and disregarded what it showed or had sued him without viewing the speech on which her claims purportedly depended, the record supports the inference that continuing the Covered Claims served, at least in part, to punish or burden Mr. Spicer for the expressive activity on which those claims were based.

56. Those circumstances also support the higher showing required by § 70-a(1)(c). After the factual basis for pursuing Mr. Spicer had collapsed, Sutton continued every Covered Claim against him while declining available avenues against the other defendants she had named. She did not complete service on Marbury or Young even after obtaining additional time to do so, and the docket reflects no request for leave to pursue alternative service. Both LSSC entities had been served and neither appeared nor responded to the FAC, yet Sutton did not pursue Rule 55 procedures against them. The Court's October 2, 2026 Order to Show Cause now requires Sutton to explain why the claims against those defendants should not be dismissed for failure to prosecute. By then, Mr. Spicer was the only defendant against whom Sutton was actively prosecuting the action.

57. On information and belief, Sutton's repeated decision to continue the Covered Claims against Mr. Spicer after the record had negated their factual premise, while declining those alternative avenues of relief and effectively prosecuting the action against him alone, supports the inference that, by that stage of the litigation, her sole purpose in continuing those claims was to harass, intimidate, punish, or otherwise maliciously inhibit Mr. Spicer's free exercise of speech, petition, or association rights.

58. Mr. Spicer is therefore entitled to recover any other compensatory damages proven under § 70-a(1)(b) and punitive damages under § 70-a(1)(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sean Michael Spicer respectfully requests that the Court enter judgment in his favor and against Defendant Renea Sutton:

(a) awarding Mr. Spicer damages under N.Y. Civil Rights Law § 70-a(1)(a), including the reasonable attorneys' fees and costs attributable to defending the Covered Claims in the Underlying Action and the reasonable attorneys' fees and costs incurred prosecuting this § 70-a action, in amounts to be determined;

(b) awarding Mr. Spicer any other compensatory damages proven under N.Y. Civil Rights Law § 70-a(1)(b), in an amount to be determined;

(c) awarding Mr. Spicer punitive damages under N.Y. Civil Rights Law § 70-a(1)(c), in an amount to be determined;

(d) awarding prejudgment and postjudgment interest to the extent permitted by law;

(e) awarding Mr. Spicer his recoverable costs and disbursements in this action; and

(f) granting such other and further relief as the Court deems just and proper.

## WAIVER OF JURY TRIAL

Plaintiff waives any right he may have to trial by jury. To the extent no other party timely and properly demands a jury trial on an issue triable of right by a jury, Plaintiff requests that this action be tried to the Court.

Dated: Washington, D.C.
October 8, 2026

VERSA LAW

By: *Dusty Parson*

Dusty D. Parson (*pro hac vice forthcoming*)
1050 Connecticut Ave, NW, Suite 500
Washington, DC 20036
Telephone: (706) 248-0567
dparson@versalawfirm.com
*Attorney for Plaintiff*